Battle, J.
 

 The action is founded on the following provisions in the 11th, 12th and 13th sections of the 111th chapter of the Eevised Statutes : “If a negro who shall be taken up as a runaway, and brought before any justice of the peace, will not declare his or her owner, such justice shall in such case, and he is hereby required, by a warrant under his hand, to commit the said negro slave to the jail of the county wherein he or she shall be taken up.” “ Where any runaway slave shall be brought before a justice of the peace, said justice shall commit the said runaway to the constable of his district by his warrant and therein order such constable to convey the said runaway to his house, or the public jail, &c.” “If any sheriff or his under-sheriff, or any constable into whose hands any runaway shall be committed by virtue of this act, shall negligently or wilfully suffer such runaway to escape, the said sheriff, under-sheriff, or constable, shall be liable to the .action of the party grieved, for recovery of his damages at the common law, with costs.”
 

 The question is, can the plaintiff recover, without showing that his slave was committed to the custody of the defendant as sheriff of Bobesou county, by a warrant under the hand of a.justice of the peace of that county?
 

 The act from which we have extracted the above-mentioned clauses, is, with regard to them, manifestly penal, and must be construed strictly; at least, it must not be extended by
 
 *304
 
 construction beyond the clear intent of the legislature. That intent was to place a slave when taken up as a runaway, under the guardianship and protection of the law, to be thereby preserved for the use of the owner. With that view, certain duties and liabilities are imposed upon the judicial and ministerial officers of the county wherein the slave may be taken up. In order that it may be certainly known that the slave is a runaway, the judicial officer, to wit, the justice of the peace is required so to adjudge, and to signify it by committing the slave by a warrant under his hand. The ministerial officer, sheriff or constable, can then know with certainty that the slave is in his custody, that he holds him in his official capacity, and must securely beep him, at the peril of being compelled to pay all such damages as the owner may sustain by his escape.
 

 If the slave be delivered to the sheriff as a runaway, without such warrant,'or upon an insufficient warrant, he will be no more responsible for his escape, under the act, than he would be for the escape of a debtor committed in execution under insufficient process. The cases are very analogous, and it is perfectly well settled, that under the twentieth section of the 109th chapter of the Revised Statutes, the sheriff is not liable for the escape of a debtor committed to jail upon a paper purjiorting to be a
 
 oa. sa.
 
 but which is void for the want of some of the essential parts of that process. See
 
 Walker
 
 v. Vick, 2 Dev. and Bat. Rep. 99. That case certainly would not have been more favorable for the plaintiff therein, had there been no semblance of a process.
 

 Whether the defendant would have been bound by his act of receiving the slave as a runaway, had he been sued at common law, without reference to the statute, it would be improper for us to decide; but we are clearly of opinion that he is not so bound, when sued upon his statute liability. In that case he cannot be called upon for his defense until the plaintiff has shown that the statute liability had been incurred by the commitment of the slave under the warrant of the justice.
 

 PER CueiaM. The Judgment is reversed and a
 
 venire de novo
 
 granted.